IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| USA FARM LABOR, INC., *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 1:23-cv-96 |
| JULIE SU, in her official capacity as Acting Secretary of Labor, *et al.*, | ) |
| Defendants. | ) |

**Defendants' Reply in support of their
<u>Motion To Dismiss the Complaint for Lack of Jurisdiction</u>**

Despite their best efforts with a Second Amended Complaint and supplemental declarations, Plaintiffs have not established an actual or imminent injury that creates Article III standing. Without standing, the Second Amended Complaint must be dismissed.

**I.  The Farm and Agri-Business Plaintiffs Lack Standing Without Any "Certainly Impending" Harm.**

As explained in Defendants' opening brief, there is not a single allegation in the Second Amended Complaint of actual, impending harm from the Final Rule to any of the 23 Plaintiffs who are farms and/or agri-businesses. Br. at 12-13. Rather, Department of Labor data showed that the Plaintiffs either had no pending H-2A applications or their certified applications were not subject to higher wage rates—in particular an Adverse Effect Wage Rate (AEWR) based on the Occupational

Employment and Wage Statistics (OEWS) survey—under the Final Rule. *Id.*; *see* Barbour Decl. ECF 38-1 at ¶ 9 (explaining that the vast majority of H-2A workers are not subject to OEWS-based AEWRs under the Final Rule).

In response, Plaintiffs contend that H-2A workers in general are critical to their businesses, particularly for harvesting crops. Op. at 7. That may be true, but it is not responsive to Defendants' argument that Plaintiffs lack standing because they are not affected by the implementation of the Final Rule. *See* Br. at 12; Barbour Decl., ECF 38-1 at ¶ 9 (as of declaration, 96.7% of H-2A workers were not subject to SOC codes with higher rates). Plaintiffs do not allege in the Second Amended Complaint that they employ workers in the occupations subject to OEWS-based AEWRs.

In a tacit admission that the allegations in their Second Amended Complaint were insufficient to establish standing, two of the 23 farm or agri-business plaintiffs allege, in newly-submitted declarations, that they plan to file H-2A applications in November or December 2023, seeking workers to perform duties beginning in February 2024, that they believe will be subject to OEWS-based AEWRs under the Final Rule. *See* Petron & Eck Supp. Decls., ECF 44-2 & 44-3.[1] These supplemental

---

[1] A third plaintiff, Four R Farms, also filed a supplemental declaration (Schiff Decl., ECF 44-1), claiming it will file applications in September, but it contains no facts regarding the particular duties of the H-2A workers it plans to hire to show that such workers would fall within the OEWS-based AEWRs of the Final Rule.

2

Case 1:23-cv-00096-MR-WCM   Document 45   Filed 09/13/23   Page 2 of 8

declarations are too vague and speculative to show standing. Merely stating that the H-2A workers' job duties will include "truck driving on public roads, construction, and mechanical duties" (ECFs 44-2, ¶ 3 and 44-3, ¶ 3) does not suffice to show that the job will be subject to the OEWS rates. The declarations provide no details regarding, for example, what specific duties of the H-2A workers will fall within the Final Rule (as not all truck driving does) or how many workers will be sought. Nor do these plaintiffs provide details as to their past usage of H-2A workers to show a pattern of use in particular job duties. "The risk of a future injury must be substantial, not merely conceivable." *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, No. 22-2034, 2023 U.S. App. LEXIS 21097, at *12 (4th Cir. Aug. 14, 2023). Plaintiffs have alleged possibilities, but not concrete facts to show a substantial risk of future harm.

Plaintiffs argue that the voluntary cessation exception to the mootness doctrine does not apply here. Op. at 10. They are correct, but not for the reasons proffered. Here, Defendants never argued that Plaintiffs' claims are moot, but rather that they lack standing. *See* Br. at 12-18. Moreover, Defendants do not contend that they ceased applying the Final Rule, but rather that the Final Rule simply has no impact on the Plaintiffs. *See* Br. at n.5 (explaining that typical farm jobs such as picking crops are not subject to the changed SOC codes and wage rates of the Final Rule). Thus, the voluntary cessation exception has no bearing on this case.

3

In their Opposition, Plaintiffs contend that they have standing because DOL can retroactively raise their wage rates under the Final Rule. Op. at 8. Plaintiffs are mistaken as to how the Final Rule operates. H-2A applications are certified with particular SOC codes, which determine the AEWR to be paid. The SOC codes do not change after certification. A labor certification with an SOC code governed by FLS data, for example, will not convert to an OEWS SOC code midstream. And while the AEWR that an employer is required to pay may increase during the period of certification (*see* 20 C.F.R. § 655.120(b)(2), (3)), that was the case prior to DOL's promulgation of the Final Rule. *See* 88 Fed. Reg. 12760, 12764-66 (Feb. 28, 2023).

Simply put, the farm and agri-business plaintiffs lack standing to bring this lawsuit because they have not alleged any actual or impending injury from the Final Rule. They should be dismissed from the lawsuit.

## II. USA Farm Labor Also Lacks Standing Because Its Theory of Harm is Entirely Speculative.

USA Farm Labor argues that though it does not use H-2A labor and is not directly regulated by the 2023 Final Rule, its business model was designed around and depends upon H-2A applications. Fick Decl. ¶¶ 3-4. It claims it anticipates that its business model will suffer as a result of the Final Rule. Op. at 13. But because USA Farm Labor is not directly regulated by the Final Rule "much more is needed to establish standing." *United States v. Texas*, 143 S. Ct. 1964, 1971 (2023)

(*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992). Here, USA Farm Labor failed to meet this more exacting standard.

Plaintiffs argue that a potential loss of customers confers standing, but the cases they cite in support—relating to trade secret theft, trademark infringement, and contractual disputes— are far afield from a standing inquiry and simply have no bearing on the issue here. Op. at 12. Plaintiffs also cite a California district court case considering a preliminary injunction against a rule that changed the fee structure for asylum seekers (Op. at 12-13), but the court there noted that the defendants never raised standing. *See Immigrant Legal Res. Ctr. v. Wolf,* 491 F. Supp. 3d 520, 543 (N.D. Cal. 2020) ("despite multiple rounds of briefing on various issues and oral argument, Defendants have not argued that Plaintiffs lack standing to sue"). As explained in Defendants' opening brief, having a business model that relies on customers that may be affected by a particular regulation does not in and of itself confer standing to the owner of the business. Br. at 14-15. USA Farm Labor must show more.

USA Farm Labor relies on surveys of its customers, but those surveys do not create standing. Significantly, with USA Farm Labor's unscientific surveys predicated by statements about fighting the Final Rule, it is entirely possible that its customers believed a more negative survey response would better enable USA Farm Labor to challenge the Final Rule and perhaps roll back the wage increases.

This is especially the case because USA Farm Labor itself appears to be uncertain as to whom the Final Rule applies (ECF Not. 44-4 at ¶ 5) and in fact inaccurately characterized the Final Rule to be much broader than it is. ECF 44-4 at 25 (describing Final Rule as applying to workers who perform a "single task" within certain categories). To date, not a single customer of USA Farm Labor has stated under oath that it has been or certainly will be forced to pay an OEWS-based AEWR for any particular H-2A applications under the Final Rule.

Plaintiffs also allege that paragraph 16 of the Fick declaration establishes harm, but that paragraph contains two conclusory sentences that USA Farm Labor has lost customers and revenue because of the Final Rule. It does not say how many customers, how much revenue, or how it determined the losses were because of the Final Rule and not for some other business reason such as switching to a competitor. Without concrete facts of actual harm to USA Farm Labor, it cannot establish Article III standing.

## CONCLUSION

For the foregoing reasons, and for the reasons in Defendants' opening brief, Plaintiffs have failed to establish Article III standing and the Second Amended Complaint should be dismissed.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

GLENN M. GIRDHARRY
Assistant Director

AARON S. GOLDSMITH
Senior Litigation Counsel

/s/ Alexandra McTague
ALEXANDRA MCTAGUE
Trial Attorney
United States Department of Justice Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 718-0483
Facsimile: (202) 305-7000
E-Mail:
alexandra.mctague2@usdoj.gov

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2023, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

                By: */s/ Alexandra McTague*
                      ALEXANDRA MCTAGUE
                      Trial Attorney
                      United States Department of
                      Justice Civil Division